**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**JESSICA WASH, on behalf of**
**herself and all others similarly situated**                                      **PLAINTIFF**

**v.**                                     Civil Action No.:  3:25-cv-173-TSL-RPM

**BEDFORD CARE CENTER OF NEWTON, LLC;**
**BEDFORD CARE CENTER OF MENDENHALL, LLC;**
**BEDFORD CARE CENTER OF HATTIESBURG, LLC;**
**BEDFORD CARE CENTER OF PETAL, LLC;**
**BEDFORD CARE CENTER OF MARION, LLC;**
**BEDFORD CARE CENTER – MONROE HALL, LLC;**
**BEDFORD CARE CENTER – WARREN HALL, LLC;**
**BEDFORD ALZHEIMER'S CARE CENTER, LLC; and**
**BEDFORD HEALTH PROPERTIES, LLC**                                      **DEFENDANTS**

---

**COLLECTIVE ACTION COMPLAINT FOR VIOLATION OF FAIR LABOR**
**STANDARDS ACT 29 U.S.C. § 201, *ET SEQ.***

---

**COMES NOW**, Plaintiff, Jessica Wash, and files this Collective Action Complaint against Defendants Bedford Care Center of Newton, LLC, Bedford Care Center of Mendenhall, LLC, Bedford Care Center of Hattiesburg, LLC, Bedford Care Center of Petal, LLC, Bedford Care Center of Marion, LLC, Bedford Care Center – Monroe Hall, LLC, Bedford Care Center – Warren Hall, LLC, Bedford Alzheimer's Care Center, LLC, and Bedford Health Properties, LLC on her own behalf and on behalf of several hundred other employees, challenging Defendants' violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA").

**PARTIES**

1.      Plaintiff, Jessica Wash, is an adult resident of Mississippi.  Plaintiff worked at the facility operated by the Defendants in Newton until approximately September of 2024.

1

2.	Plaintiff brings this lawsuit as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all similarly situated employees who were or are employed by Defendants.

3.	Defendant, Bedford Care Center of Newton, LLC ("Bedford Newton") is a Limited Liability Company formed under the laws of the State of Mississippi.  Bedford Newton's principal business place is at 100 West Pine Street in Hattiesburg, Mississippi.  Bedford Newton can be served with process by and through its agent, Michael McElroy, Jr. at 100 West Pine Street, Hattiesburg, MS 39401.

4.	Defendant, Bedford Care Center of Mendenhall, LLC ("Bedford Mendenhall") is a Limited Liability Company formed under the laws of the State of Mississippi.  Bedford Mendenhall's principal business place is at 100 West Pine Street in Hattiesburg, Mississippi.  Bedford Mendenhall can be served with process by and through its registered agent, Michael McElroy, Jr. at 100 West Pine Street, Hattiesburg, MS 39401.

5.	Defendant, Bedford Care Center of Hattiesburg, LLC ("Bedford Hattiesburg") is a Limited Liability Company formed under the laws of the State of Mississippi.  Bedford Hattiesburg's principal business place is at 100 West Pine Street in Hattiesburg, Mississippi.  Bedford Hattiesburg can be served with process by and through its registered agent, Michael McElroy, Jr. at 100 West Pine Street, Hattiesburg, MS 39401.

6.	Defendant, Bedford Care Center of Petal, LLC ("Bedford Petal") is a Limited Liability Company formed under the laws of the State of Mississippi.  Bedford Petal's principal business place is at 100 West Pine Street in Hattiesburg, Mississippi.  Bedford Petal can be served with process by and through its registered agent, Michael McElroy, Jr. at 100 West Pine Street, Hattiesburg, MS 39401.

2

7.        Defendant, Bedford Care Center of Marion, LLC ("Bedford Marion") is a Limited Liability Company formed under the laws of the State of Mississippi.  Bedford Marion's principal business place is at 100 West Pine Street in Hattiesburg, Mississippi.  Bedford Marion can be served with process by and through its registered agent, Nicole Bevon, at 100 West Pine Street, Hattiesburg, MS 39401.

8.        Defendant, Bedford Care Center – Monroe Hall, LLC ("Bedford Monroe") is a Limited Liability Company formed under the laws of the State of Mississippi.  Bedford Monroe's principal business place is at 100 West Pine Street in Hattiesburg, Mississippi.  Bedford Monroe can be served with process by and through its registered agent, Michael McElroy, Jr. at 100 West Pine Street, Hattiesburg, MS 39401.

9.        Defendant, Bedford Care Center – Warren Hall, LLC ("Bedford Warren") is a Limited Liability Company formed under the laws of the State of Mississippi. Bedford Warren's principal business place is at 100 West Pine Street in Hattiesburg, Mississippi.  Bedford Warren can be served with process by and through its registered agent, Michael McElroy, Jr. at 100 West Pine Street, Hattiesburg, MS 39401.

10.       Defendant, Bedford Alzheimer's Center, LLC ("Bedford Alzheimer's") is a Limited Liability Company formed under the laws of the State of Mississippi. Bedford Alzheimer's principal business place is at 100 West Pine Street in Hattiesburg, Mississippi.  Bedford Alzheimer's can be served with process by and through its registered agent, Michael McElroy, Jr. at 100 West Pine Street, Hattiesburg, MS 39401.

11.       Defendant Bedford Health Properties, LLC ("Bedford Health") is a Limited Liability Company formed under the laws of the State of Mississippi.  Bedford Health's principal business place is at 100 West Pine Street in Hattiesburg, Mississippi.  Bedford Health can be served

with process by and through its agent, Michael McElroy, Jr. at 100 West Pine Street, Hattiesburg, MS 39401.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1331.

13.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business operations in the State of Mississippi.  Further, this Court may exercise personal jurisdiction over Defendants because the personnel decisions giving rise to the wrongful employment actions that are the subject of this suit were made by Defendants' employees who work in Mississippi.  Moreover, this Court may exercise personal jurisdiction over Defendants because the Defendants reside in Mississippi.

## FACTUAL ALLEGATIONS

14.     Bedford Newton, Bedford Mendenhall, Bedford Hattiesburg, Bedford Petal, Bedford Marion, Bedford Monroe, Bedford Warren, Bedford Alzheimer's, and Bedford Health (collectively referred to as the "Bedford Defendants") jointly operate eight skilled nursing facilities in Mississippi.

15.     Plaintiff worked at the Bedford Defendants' facility in Newton as a certified nursing assistant ("CNA").

16.     Plaintiff was paid on an hourly basis through the entirety of her employment.

### *FLSA Allegations*

17.     The Bedford Defendants are a business enterprise that generates more than $500,000 in annual revenue.

18.     The Bedford Defendants employ hundreds of CNAs, LPNs, and RNs (collectively "Nursing Personnel") at their eight facilities.

19. The Bedford Defendants' Nursing Personnel frequently worked more than forty (40) hours per week.

20. The Bedford Defendants instituted a policy whereby it deducted thirty minutes per day from all its Nursing Personnel for an unpaid meal break regardless of whether any break was taken.

21. When Plaintiff attempted to take a meal break, it was routinely interrupted.

22. The patients at all eight facilities operated by the Bedford Defendants require round-the-clock care and round-the-clock staffing.

23. As a result, Plaintiff and the Nursing Personnel are not able to fully relieve themselves from duty for thirty minutes.

24. For example, Plaintiff was required to respond to call lights and assist patients while on "break."

25. As a result, Plaintiff's "break" was routinely interrupted by responding to call lights and assisting patients.

26. Similarly, because Plaintiff was too busy tending to patients during the entirety of her shift, Plaintiff routinely completed her required charting while she was on "break."

27. Because Plaintiff was required to continue her work responsibilities while on "break," by responding to call lights, assisting patients, and charting, Plaintiff was severely limited in being able to spend that time as she saw fit.

28. For example, if Plaintiff was attempting to eat a meal, she would have to stop eating in order to respond to the call lights.

29. Similarly, Plaintiff would complete her charting while she simultaneously attempted to eat a meal.

30.     Because Plaintiff was required to work through these thirty-minute breaks, this time should have been compensated.

31.     By requiring Plaintiff and the Nursing Personnel to work through these meal breaks yet automatically deducting thirty minutes from their timesheets, the Bedford Defendants have failed to compensate Plaintiff and the Nursing Personnel for all hours worked.  By neglecting to do so, the Bedford Defendants systematically deprived Plaintiff and the Nursing Personnel of the minimum wage and overtime they are due pursuant to 29 U.S.C. §§ 206 and 207.

32.     Moreover, if Plaintiff or the Nursing Personnel left the premises for their meal break, they were required to clock out and clock back in upon return.

33.     However, the Bedford Defendants' automatic meal deduction policy deducted thirty minutes from their paystubs in addition to the time they were clocked out.

34.     For example, if a member of their Nursing Personnel left the premises to eat lunch and was clocked out for thirty minutes, the employee was not compensated for the thirty minutes he or she was clocked out, and the Bedford Defendants deducted an additional thirty minutes from the employee's time sheet.

35.     The Bedford Defendants made this additional automatic thirty-minute deduction despite requiring their Nursing Personnel to immediately return to their work upon clocking back in.

36.     By automatically deducting an additional thirty minutes from their Nursing Personnel's timesheets, the Bedford Defendants have failed to compensate their Nursing Personnel for all hours worked.  By neglecting to do so, the Bedford Defendants systematically deprived their Nursing Personnel of the minimum wage and overtime they are due pursuant to 29 U.S.C. §§ 206 and 207.

37.    Moreover, the Bedford Defendants paid a couple of different forms of compensation in addition to the straight-time wages paid to its employees.

38.    For example, the Bedford Defendants would pay incentives to Plaintiff and the Nursing Personnel for picking up additional shifts.

39.    These payments varied but were up to $150 per pay period.

40.    Moreover, the Bedford Defendants also paid shift differentials to employees for working shifts that spanned across different hours.

41.    For example, the Bedford Defendants would pay a higher rate for a shift that spanned from 11 pm to 7 am than it would pay for a shift that spanned from 7 am to 3 pm.

42.    In addition, the Bedford Defendants also offered sign-on bonuses to its employees.

43.    These bonuses varied but typically ranged from $3,000 to $7,500.

44.    As of March 13, 2025, the Bedford Defendants are advertising sign-on bonuses for CNAs, LPNs, and RNs at their facilities in Newton, Marion, Monroe, Mendenhall, Picayune, Petal, and at their Alzheimer's facility.

45.    These bonuses were paid out in installments and contingent upon each employee remaining employed for a certain period of time.

46.    For example, the Bedford Defendants might pay half of the signing bonus after thirty (30) days of employment and the remaining half after ninety (90) days of employment.

47.    If Plaintiff and the Nursing Personnel ended their employment before working the required number of days, no sign-on bonus would be paid.

48.    Plaintiff was paid a sign-on bonus of approximately $3,000 in or around November of 2023 – nearly six months after she was hired.

7

49.     During the entirety of her employment, Plaintiff routinely worked more than forty (40) hours per week.

50.     Plaintiff was typically scheduled on rotating twelve (12) hour shifts. Typically, Plaintiff would work seven twelve (12) hours shifts every two weeks. This resulted in Plaintiff working more than forty hours at least every other week.

51.     From the date she was hired through the date the sign-on bonus was paid, Plaintiff routinely worked more than forty (40) hours per week.

52.     Despite paying these additional forms of compensation, the Bedford Defendants failed to include these amounts in the calculation of Plaintiff and the Nursing Personnel's weekly regular rate of pay.

53.     By failing to include these amounts in the calculation of each employee's weekly regular rate of pay, the Bedford Defendants failed to pay Plaintiff and the Nursing Personnel one-and-one-half times their regular rate for all hours worked in excess of forty (40) per week. By neglecting to do so, the Bedford Defendants systematically deprived Plaintiff and the Nursing Personnel of the overtime they are due pursuant to 29 U.S.C. § 207.

54.     The Bedford Defendants knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Nursing Personnel for their overtime work would violate the FLSA.

55.     The Bedford Defendants were aware of the FLSA's overtime compensation requirements.

### *Joint Employer Allegations*

56.     The Bedford Defendants share a principal office address – 100 West Pine Street Hattiesburg, MS.

57.     All the Bedford Defendants list Michael E. McElroy, Jr. as either their manager or member on the Mississippi Secretary of State's website.

58.     Seven of the eight Bedford Care Centers list Mr. McElroy, Jr. as either an owner or director with the Center for Medicare and Medicaid Services.  The remaining facility, Bedford Alzheimer's Care Center, LLC, does not participate in the Medicare or Medicaid program and does not report to the Center for Medicare and Medicaid Services.

59.     The Bedford Care Centers are represented as one company with multiple locations on their shared website, https://www.bedfordcarecenters.com/.

60.     For example, the landing page of the shared website starts by saying, "Eight Facilities, One Mission…"

61.     Similarly, the "About Us" page claims, "[t]here are eight Bedford Care Center nursing center locations throughout central and south Mississippi to meet your nursing care and rehabilitation needs."

62.     The website's "History" page states, "[t]hroughout the years, Bedford Care Centers has grown from one facility to eight skilled-nursing centers."

63.     The website also contains a "Careers" page which includes a shared job posting page for openings with the Bedford Defendants.

64.     The "Careers" page also includes an "Employee Benefits" page in which some of the benefits offered to all employees of the Bedford Defendants are listed.

65.     The benefits listed are common to all facilities operated by the Bedford Defendants.

66.     The page continues to list other "related companies" including HMP Nursing Services, Inc. ("HMP Nursing").

67.     HMP Nursing is under common ownership with the Bedford Defendants.

9

68.    HMP Nursing provides private duty nursing and staff relief nursing services.

69.    As part of its staff relief nursing services, HMP provides individuals who fill in when someone calls from a skilled nursing facility, independent living center, clinic, or hospital and needs a qualified healthcare professional on a short-term or long-term assignment.

70.    The Bedford Defendants frequently rely on HMP for temporary nursing personnel to cover shifts.

71.    Upon information and belief, the group health insurance benefits offered to the Bedford Defendants' employees are centralized through a common plan titled "Hattiesburg Medical Park/Conva Rest Group Insurance."

72.    Hattiesburg Medical Park/Conva Rest Group Insurance's Form 5500 for the 2023 calendar year listed 868 participants at the beginning of the year and 628 participants at the end of the year.

73.    Bedford Health listed only 92 and 77 employees on its applications for Paycheck Protection Program ("PPP") loans.

74.    Hattiesburg Medical Park Management Corporation is another affiliated entity of the Bedford Defendants.

75.    Hattiesburg Medical Park Management Corporation lists its principal office address as 100 West Pine Street, Hattiesburg, MS 39401.

76.    Hattiesburg Medical Park Management Corporation also lists Michael Eugene McElroy, Jr. as its director and president on the Mississippi Secretary of State's Website.

77.    Upon information and belief, Hattiesburg Medical Park Management Corporation and the Bedford Defendants share common ownership.

78.     Hattiesburg Medical Park Management Corporation listed only 31 employees on its application for a Paycheck Protection Program ("PPP") loan.

79.     Upon information and belief, the discrepancy between the total employee count listed by both Bedford Health and Hattiesburg Medical Park Management Corporation and the total participants in the Hattiesburg Medical Park/Conva Rest Group Insurance plan is because all employees of the Bedford Defendants are participants in the plan.

80.     Upon information and belief, the retirement savings plan offered to the Bedford Defendants' employees is centralized through a common plan titled "Hattiesburg Medical Park Management Retirement Savings Plan."

81.     Hattiesburg Medical Park Management Retirement Savings Plan's Form 5500 for the 2023 calendar year listed 537 participants at the beginning of the year and 473 participants at the end of the year.

82.     Upon information and belief, the discrepancy between the total employee count listed by both Bedford Health and Hattiesburg Medical Park Management Corporation and the total participants in the Hattiesburg Medical Park Management Retirement Savings Plan is because the Bedford Defendants' employees are participants in the plan.

*Collective Allegations*

83.     Plaintiff brings this action as a collective action pursuant to 29 U.S.C. § 216 on behalf of the following collective:

> **Company Wide Class**
>
> All current and former CNAs, LPNs, and RNs of the Bedford Defendants who \ had thirty minutes automatically deducted for a meal period or earned incentives for picking up an extra shift, shift differentials, or a sign on bonus during weeks he or she worked more than forty hours.

84.     The Bedford Defendants subjected all their hourly, nonexempt Nursing Personnel, including Plaintiff and the Putative Collective Members, to its policy of failing to pay for all hours worked and failure to properly calculate and pay the employees' overtime wages.

85.     Plaintiff's claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar.  Specifically, all Nursing Personnel were subject to the Bedford Defendants' policies of mandatory deductions for meal periods despite never being fully relieved from work.  Likewise, all Nursing Personnel are subject to the Bedford Defendants' policy or procedure of failing to include any incentives for picking up additional shifts, shift differentials, and sign on bonuses in to the calculation of each employee's weekly regular rate of pay.

86.     The Putative Collective Members perform or have performed the same or similar work as Plaintiff.

87.     The Bedford Defendants' failure to pay minimum wage and overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiff or the Putative Collective Members.

88.     Although the exact amount of damages may vary among the Putative Collective Members, the damages for the Putative Collective Members can be easily calculated by a simple formula.  The claims of all Putative Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Bedford Defendants that caused harm to all the Putative Collective Members.

89.     The Bedford Defendants were aware or should have been aware that federal law prohibited them from not paying their employees minimum wage and all overtime wages as required by the FLSA.

90.     The Bedford Defendants' unlawful conduct has been widespread, repeated, and consistent.

91.     This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

92.     Upon information and belief, the individuals similarly situated to Plaintiff contains several hundred individuals.   The exact number or identification of the Putative Collective Members is presently unknown.  The identity and number of the Putative Collective Members is ascertainable and can be determined from the Bedford Defendants' records.

93.     Notice can be provided to the Putative Collective Members by First Class Mail to the last address known to the Bedford Defendants, via email at the last known email address known to the Bedford Defendants, and by text message to the last known telephone number known to the Bedford Defendants.

**COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT – MINIMUM WAGE**

94.     Plaintiff, by this reference, adopts and re-asserts all allegations, averments, and statements of fact contained in the preceding paragraphs of this Complaint.

95.     By failing to pay Plaintiff and the Putative Collective Members for all hours worked, the Bedford Defendants have failed to pay the required minimum wage compensation as mandated by 29 U.S.C. § 206.

96.     Although at this stage, Plaintiff and the Putative Collective Members are unable to state the exact amount owed for all minimum wages that have not been paid, Plaintiff and the

Putative Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

97.     The Bedford Defendants knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiffs and the Collective Members for all hours worked would violate the FLSA.

98.     The Bedford Defendants were aware of the FLSA's minimum wage compensation requirements.

99.     As a result of the Bedford Defendants' failure or refusal to pay Plaintiff and the Putative Collective Members the minimum wage compensation deserved, the Bedford Defendants violated 29 U.S.C. § 206. Plaintiffs and the Collective Members are therefore entitled to compensation for the minimum wage compensation shortfall to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**COUNT II – VIOLATION OF THE FAIR LABOR STANDARDS ACT - OVERTIME**

100.    Plaintiff, by this reference, adopts and re-asserts all allegations, averments, and statements of fact contained in the preceding paragraphs of this Complaint.

101.    By failing to pay Plaintiff and the Putative Collective Members for all hours worked, the Bedford Defendants have failed to pay the required minimum wage compensation as mandated by 29 U.S.C. § 207.

102.    Moreover, by failing to include Plaintiff and the Putative Collective Members' nondiscretionary pay into the calculation of each employee's weekly "regular rate of pay," the

14

Bedford Defendants have failed to pay the required overtime compensation as mandated by 29 U.S.C. § 207.

103.     Although at this stage, Plaintiff and the Putative Collective Members are unable to state the exact amount owed for all overtime wages that have not been paid, Plaintiff and the Putative Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

104.     The Bedford Defendants knew that – or acted with reckless disregard as to whether – their refusal or failure to properly compensate Plaintiffs and the Putative Collective Members for their overtime work would violate the FLSA.

105.     The Bedford Defendants were aware of the FLSA's overtime compensation requirements.

106.     As a result of the Bedford Defendants' failure or refusal to pay Plaintiff and the Putative Collective Members the overtime compensation deserved, the Bedford Defendants violated 29 U.S.C. § 207(a). Plaintiffs and the Putative Collective Members are therefore entitled to compensation for the overtime compensation shortfall to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**JURY DEMAND**

107.     Plaintiff requests a trial by jury on these claims.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff requests this Court enter the following relief:

15

a.  Declare and find that the Defendants have violated the FLSA, 29 U.S.C. § 201 *et seq.*;

b.  Certify this case as a collective action;

c.  Award compensatory damages and penalties, in an amount according to proof;

d.  Award liquidated damages;

e.  Award pre- and post-judgment interest;

f.  Award reasonable attorneys' fees, costs, and expenses; and

g.  Award any and all additional relief the Court may deem appropriate.


Respectfully Submitted,

**JESSICA WASH**


By:    /s/ William "Jack" Simpson
          William "Jack" Simpson, MBN 106524
          **SIMPSON, PLLC**
          100 South Main Street
          Booneville, MS  38829-0382
          Telephone: (662) 913-7811
          Facsimile: (662) 728-1992
          Email: jack@simpson-pllc.com

16